Good morning, Your Honors. Mitchell Keeter on behalf of Appellant Robert Cipriani. I'd like to reserve five minutes of my time for rebuttal if I could. This is not a judicial estoppel case. It might be a case involving a judicial admission, which is what Appleby's requested below, saying, quote, plaintiff's factual admissions in the Alexander counterclaim are deemed judicial admissions conclusively binding on plaintiff. And Cipriani has no objection to that. He has never disputed that Alexander was trespassed from the casino and never will. It's an established fact. But judicial estoppel is a different animal. Judicial estoppel occurs when a party asserts irreconcilable claims to gain an unfair advantage. So, for example, the estate of Marilyn Monroe claims a New York domicile to obtain a lower tax rate and then disavows that and claims a California domicile to obtain a right of publicity. Or in the Spectrum case, Spectrum claims the infringement occurred before April 2001 to defeat a showing of imminent harm and then disavows that and claims the infringement occurred after April 2001 to obtain insurance coverage. Nothing like that happened below. Mr. Cipriani has never disavowed the fact of the trespass of Alexander. Appleby's theory is that it is completely irreconcilable that the casino allowed harassment for several weeks and then, belatedly, after the problem got out of hand, trespassed Alexander in late November. I think as I understand where the district court was coming from, it took the allegation that Mr. Cipriani, that the casino did nothing to address this issue and then related it back to the fact that there was, in the cross-complaint, the trespassing rejection of Mr. Alexander and those are mutually inconsistent. So why, you know, we're reviewing this under an abuse of discretion standard. Why, and I understand that there may be different ways to argue this, but why is it an abuse of discretion here to apply judicial estoppel to these facts? Because the claim, the documents are really clear that Cipriani had claimed there was harassment for a period of weeks prior to November 19th and that Alexander was trespassed on that date or after that date. And as we cited the Frankel case, which showed that UCLA students were harassed in April and the university ejected or trespassed the harassers in May and those were not irreconcilable in any way. So if someone is saying in early November a party engaged in misconduct and then in late November, you know, the institution, the defendant, belatedly put a stop to it, that does not necessarily absolve that party for the early November misconduct. I'm sorry, go ahead. I mean, you know, the dates matter. I mean, if you allow harassment, and of course in summary judgment we have to assume these facts to be true, if you allow harassment in early April, just because the casino finally trespasses weeks later, that is not irreconcilable with, you know, with the prior fact. And that's why this case is different from judicial estoppel cases, where the party takes a position and then completely disavows it and takes the opposite position. That did not happen here. As I understand the record, although I'm not sure the document that I'm referencing is in the excerpts of record, that in the initial complaint to which Mr. Cipriani filed his answer and counterclaim, in paragraph 19 of Mr. Alexander's complaint, Mr. Alexander alleged, as a result of the altercation, plaintiff was trespassed. So he actually made that allegation in his original complaint even before there was a counterclaim. Right. I mean, it's never been in dispute that Alexander was trespassed. And that's, again, why this case is different from these other cases where the party takes a position and then disavows it to gain an advantage. Cipriani has never disavowed. But your argument is just that things finally got out of control, and so they trespassed him. Exactly. They were encouraging. They allowed it for several weeks, and then it got out of hand in the publicity and whatever, and then they finally took action. But that delayed action in late November does not necessarily absolve them for the prior negligence in the week's proceeding. Not necessarily. On the second part of the barrel-on-one-row test, if I'm correct in calling it a test, that the party has succeeded in persuading a court to accept the court's earlier position, is there anything in this record that the Clark County Trial Court did anything to accept some position that your client was arguing before the Clark County Trial Court? No, not as to this issue. The only possible question is the appellees presented their own theory, which is that the wording of the complaints could be construed if it were sort of adjusted to say that on October 19th, and then it said Alexander began harassing. And it could be read if they wanted to say he began on November 19th. This is around my reply brief, page 28. But even if we were to read Mr. Cipriani's complaint so loosely as to say that it said Alexander began on November 19th. But let's say we read it that way. Is there anything in the record that there was judicial acceptance of that position? No, not of that point, because it would not profit Mr. Cipriani in any way to say there was no harassment prior to November 19th. But what was their judicial acceptance of by the court? Well, I mean, it does seem that the court acknowledged that there was a trespass on November 19th, which is, again, not in dispute. And how did that case ultimately get resolved without telling me anything that's confidential? I believe both parties withdrew their claims and it was dismissed. So there was no definitive ruling by the trial court? Right. The trial court did not accept or rely on any position. There was not a settlement agreement? Maybe I misremembered. I mean, my recollection, I wasn't involved in that part, but that they each agreed to dismiss the claims. I don't know anything beyond that. But there's nothing, even if there were, am I correct, that even if there were something beyond dismissal and walk away, that's not in our record? Right. And it would not also qualify as the court's relying on it, as I believe like in Ron V. Jenkins, it says the court must rely on this assertion, not just have it be stated. Well, I mean, I suppose as a theoretical matter, there could be facts where there was a public settlement agreement that the court had to sign off on, which had facts in it. But even if that hypothetical would work, we don't have anything in the record here to indicate that. That's as I understand it. Yes, Your Honor. So Frankel precludes the theory the court relied on. The police do offer two others. One is that in the Alexander proceedings, Cipriani focused on Alexander's misconduct, whereas here Cipriani focused on the casino's misconduct. But the very sentence, both defendants are named in the same sentence. For example, it says defendants should have never permitted Alexander to engage in harassment, or defendants refused to act and allowed Alexander to continue his relentless campaign. So this is just like the Yanez case, where there was a case against the chemical supplier and the plaintiff cited the supplier's misconduct, and then there was a case against the government and the plaintiff cited the government's negligent supervision. And the Court of Appeals claimed there's no inconsistency to have two different defendants who could be at fault. Counsel, did you make any argument moving a little bit in your opening brief that claimed that the district court's dismissal of the IAED civil conspiracy or concert of action claims was incorrect? No, we didn't. I mean, our brief focused on the judicial estoppel theory. No, but the district court gave some alternative reasons for some of the dismissals, right? Right. Well, the district court, I want to be clear on this, because the judicial estoppel ground is what the court relied on for dismissing the negligence, in-keep reliability and negligence supervision case against Resorts World. Yes. Is that all you're challenging now? Well, we're also challenging some of the points against Sabella regarding negligence and in-keep reliability, but we're not challenging the civil conspiracy or the IAED. Okay, well, that was my question, so you've answered that. Thank you. Right, right. I mean, because it's ultimately the same set of facts, and it's just a question of which cause of action it will proceed under. And so, but the problem really is that the district court relied solely on judicial estoppel as the grounds for dismissing. For the casino. I was going to ask a question about a different topic, not judicial estoppel. Oh, just quickly, you know, when I read Hamilton, that's one of our judicial estoppel decisions, it's relying on New Hampshire versus Maine and talks about how these factors, we're considering them are equitable and a court doesn't have to rely on any one of the three. They're not exhaustive necessarily. And so is it your view that each of these factors has to be met or that a court in its equitable position can look at different factors and decide whether some unfairness has existed in the judicial proceedings? Well, I mean, New Hampshire v. Maine does explain there's some flexibility. It's not rigid, and that's fine. But if you look at some of the cases, for example, I think it was the Perez case, where they say that if the plaintiff opts out today, we'll let her opt out of arbitration. And then she opts out, and they say, oh, no, you can't, because there was some other reason. You know, there's basically unfairness where you take a position to gain an advantage, and then after you gain the advantage, you say, oh, no, now in this case I want to take the opposite position. And that's unfair. It's unfair in the Marilyn Monroe case, it's unfair in the Spectrum case, where you change your positions to suit your interests in each case. That just didn't happen here. There's no question. Alexander was trespassed on November 19th or thereafter, and Cipriani's never denied that. So the point is simply, could there have been some harassment and some fault of the casino prior to that date? And that's the question, and there's nothing about judicial— And you're saying there's no unfair advantage at all either. Right. I mean, yes, he was trespassed, and Cipriani does not dispute that, never has, never will. So he's not changing his position as to that trespass to gain an unfair advantage. You know, and there's nothing irreconcilable about saying, yes, they allowed harassment for several weeks, and then it got out of hand and they finally put a stop to it. There's no inconsistency. He's not changing positions to gain an unfair benefit. I was hoping you could just spend a moment on this issue of whether Sabella is an innkeeper here. I'm having a hard time seeing that. It seems to me that here, I think it's Genting Group, the owner of Resorts World, would be the innkeeper. So what's your best case on that? Do you have any binding evidence on that? It certainly makes sense you're having a hard time because there's so little case law on the subject, and it's not even in Nevada. But the bottom line is the statute is phrased in the disjunctive, owner or keeper, which certainly suggests that the keeper is not the owner. The keeper can be someone else. So I agree with you. That's the way the statute reads. But if we were to hypothetically rule that Sabella was an innkeeper, what would it be that we would opine is the Nevada test that would make him an innkeeper, as opposed to just somebody who had an ownership interest or even some remote management interest? What about Sabella, in your best case, makes him an innkeeper? That he had the authority and the control over operations to take actions and to take certain decisions where necessary, which in this case would involve the trespass of Alexander. So he had the authority. He was aware of the problem or should have been aware of the problem and declined to take reasonable steps to protect. So it could be like the CFO in a different circumstance? Or the IT manager? I don't know about IT, because IT might not have the final authority. To me, you might reach a lot of employees. There might be a lot of employees that would have the authority to, say, kick somebody out if they were misbehaving. So, yeah, I'm still struggling to see what it is about. Right. Well, the innkeeper itself, again, should be separate. I'm going to reserve some time. But I would just say that there ought to be someone other than an owner who could have some responsibility. I'd like to reserve my remaining time. All right. And we've asked you a lot of questions. We'll give you some extra time on rebuttal. May it please the Court. My name is Tamara Beatty-Peterson, and I represent Resorts World. Pursuant to prior agreement before this argument, my colleague will be speaking for five minutes, and I'll be speaking to you for ten. Mr. Cipriani filed an action against Resorts World and Scott Sabella, who's the former president of Resorts World, for alleged harm and infliction of emotional distress while Cipriani was a patron at the Resorts World casino. Mr. Cipriani's first amendment complaint did not seek damages for physical injury. Instead, his first amendment complaint, as pled, originally sought damages from a so-called unjustified arrest, the allegedly baseless imposition of criminal charges, reputational and professional harm, and for his inability to pursue his chosen profession. He is a professional gambler. But Cipriani had narrowed his claims in responding to the motions to dismiss. He said that he was not alleging claims based on Resorts World reporting Cipriani to the Nevada Gaming Control Board for Cipriani's past posting bets. And he said he was not alleging claims based on Resorts World reporting Cipriani stealing a cell phone from the person of another patron, Mr. Alexander. Relying on Cipriani's narrowing of his complaint, the district court actually applied judicial estoppel in construing Cipriani's claims as alleging harm because of defendants either encouraging Alexander to harass him or letting Alexander harass him. Now, that application of judicial estoppel is not part of this appeal. Cipriani does not take issue with that. He actually said it was not pertinent to this appeal. After thoughtfully considering what was remaining in Cipriani's claims as they were alleged in the First Amendment complaint, the district court considered as well by Resorts World's request for judicial notice that she consider that other state court action and she dismissed the case with prejudice. She did not abuse her discretion in applying judicial estoppel and in dismissing the First Amendment complaint with prejudice. It is true. So what is the unfair advantage here? That's what I'm trying to figure out. So he, you know, if I take counsel's argument, they're alleging that there was a period of harassment that predated for several weeks the ejection. There's no dispute between the parties that Mr. Alexander was finally ejected. So what kind of unfair advantage would Mr. Cipriani gain by saying what he had in the cross complaint versus what happened here? So I'd like to address that in several parts. What's the unfair advantage? First, I want to make sure that I explain as well the case that was mentioned by this panel already, New Hampshire v. Maine, says specifically that this judicial estoppel doctrine is an equitable doctrine that's invoked by the court at its discretion. There are not inflexible prerequisites that have to be met. There is no formula that has to be met. There's no test that has to be met. The Supreme Court says we do not establish inflexible prerequisites or an exhaustive formula. In fact, the Supreme Court has said in that New Hampshire v. Maine case that additional considerations may inform the doctrine's applications. Before the district court, what she considered and what she had before her at the time of her decision were several inconsistencies between the time that the other action that was filed in state court. First off, in his first admitted complaint, Cipriani said that Resorts World did nothing to protect Cipriani's safety and well-being. Did nothing. I have to say that I read the complaint just taking its words as different than what you just said. He talks about Alexander, paragraph 36, should never have been permitted to gamble after they were expressly notified. And he says they did nothing, electing to turn a blind eye to ensure their obligations to ensure clean gambling and the safety of their casino patrons. So I don't I don't I don't read this necessarily as saying they did nothing at all in in any arena. But but even if they did, what is there that they did in the circuit court? I'm sorry, the trial court that is clearly inconsistent with saying they let him harass me for all of this time. What is clearly inconsistent that they alleged in Clark County? Your Honor, there's a couple of parts to that. But let's be clear, that district court in Clark County dismissed that case. OK, that was there was a stipulation in order to dismiss the case. So there was a case that Alexander brought. Cipriani filed a counterclaim. The parties eventually asked the court to dismiss it. Right. Correct. So what did Cipriani do in that case that was clearly inconsistent with what he did in our case? So there not only were the things that he did, but there were things that he alleged. And we identified three things that he alleged that were different. The first was that that Resorts World did nothing, which he alleged in this first amendment complaint. Whereas in the Alexander case, he said Resorts World did something to protect Cipriani, actually trespassed Alexander. Number two. The did nothing statement, it had to do with Sabella's lack of enforcement of anti-money laundering laws. I mean, that's the section of the complaint that that statement is in. So it seems to me that you're taking it out of context when you apply it to them doing nothing about Alexander's conduct. I mean, that's just not what it said. The district court, in her discretion, thought that that was important because it was trying to establish a duty. But not only that. But Alexander, before Cipriani ever filed a counterclaim and answer, alleged that the plaintiff was trespassed. I mean, paragraph 19. As a result of the altercation, Plaintiff Robert was trespassed. And so that was made before he even said the same thing in his counterclaim. The mutually inconsistent part of that is that Resorts World did nothing versus Resorts World trespassed Alexander as a patron in order to ensure the safety of guests. And that's from his Alexander counterclaim that's in the excerpts. Right. He said the same thing Alexander said. Well, no, because he said in the complaint that the district court had, Resorts World did nothing. In the Clark County case, Alexander said, I was trespassed. And Cipriani also said Alexander was trespassed. To ensure his safety, to ensure safety of guests. That's what he said in the Alexander action. And also he said that in the Alexander action, he said it happened on that one day. In the case before the district court in the first amendment complaint, Cipriani says that there was some encouragement for a week's long campaign. But in that Alexander counterclaim, he said it began on that one very bad day. And there was a third inconsistency that we identified. And in his first amendment complaint before the district court, he said that Resorts World and Scott Sabella caused substantial and enduring emotional distress. But then in his counterclaim that he filed against Alexander, he said that Alexander and his son caused Cipriani to suffer severe emotional distress. You can't have distress caused by multiple people? When we raised this before the district court, Cipriani did not explain his inconsistencies. He did not oppose the request for judicial notice. And in fact, before he filed his opposition, that case, that Alexander case, was dismissed with prejudice by the court. And he didn't even notify the court of that. And well, it was presumably a matter of public record. But we obtained, we asked the district court to take judicial notice of it because it is public record. So what advantage, these allegations which you allege are inconsistent with the allegations he made in the federal case. What advantage did he gain from the court in Clark County for making those allegations? The district court cited the case of Rossetto versus the plumbers and something fitters. I don't think it's pipe fitters. It's the steam fitters, plumber steam fitters case. And she cited that case for the proposition that a favorable settlement can constitute success. What was the favorable settlement? A dismissal with prejudice of the claim that he had. Everything got dismissed, right? Everything got dismissed. Is there any indication that in approving the settlement, the Clark County court relied on any statements that Mr. Cipriani had made in his answer or counterclaim? There's nothing in the state court that we could see, Your Honor. But Cipriani didn't explain it either. And so the district court was in a position where she's also looking at Hamilton and knowing that the doctrine of judicial estoppel is to protect against litigants playing fast and loose. And I don't know what else she could have considered other than to say this is obviously a favorable settlement that he didn't want to tell me about. Now, all of these being set aside, though, the district court, as the panel has noted, did have over four pages of her order devoted to other claims. And this court can can affirm on any ground that's made manifest by the record. And that includes. Can I go back to the federal? So a favorable settlement. There's a settlement between Cipriani and Alexander in the state action and it gets dismissed. How does that how does him alleging in the federal action that there was a period of harassment for several weeks? How is he gaining an unfair advantage from what he said before? Because there's no reconciliation of those items at all and they are exclusive. How can he have it? And there's two parts of this.  Either either. We don't know. Right. Because Cipriani never told us what the terms of the settlement were. Let me finish, please. The unfair advantage relates to taking getting something out of the inconsistent positions themselves, you know, saying one thing and then saying a mutually inconsistent thing in the other in a different proceeding or the same proceeding and getting some kind of advantage out of it. And I'm not I'm still struggling to figure out what that advantage is. I did see in the reply brief that Mr. Cipriani filed before this court a statement without citation that said he did not take anything from the resolution of that case. Now, the problem is there's no citation because there was that was never presented to the district court. But it raises a very important question. If Cipriani took nothing from his claims against Alexander, his claims were worthless. And how on earth can he possibly maintain a claim against Resorts World for failing to protect him against Alexander? The worthless claims. Now, we don't have we don't have this, but that's the problem about playing. But I guess then the answer is then the court shouldn't rely on judicial estoppel, but should resolve the claims on their merits. Well, I'm sorry, I don't understand the question, Your Honor. The court can apply judicial estoppel because it's an equitable doctrine and she's and she's been asked to take judicial admissions of these facts and she can apply it under the U.S. Supreme Court rule. And so in that in that scenario, she she has not abused her discretion in saying there can be nothing that precedes. Thank you, counsel. We'll hear from you. Thank you very much. And I apologize for going over. No, that's fine. We asked a lot of questions. Good morning. May it please the court. My name is Colby Williams. I represent Scott Sabella, the individual defendant of Pele in this matter. Mr. Cipriani purports to challenge two of the district court's rulings related to Mr. Sabella. Judicial estoppel is not involved, Mr. Sabella. So I'm not going to get into that. The two rulings he purports to challenge are the dismissal of his negligence claim and the dismissal of a statutory claim for inkeeper liability. Let's quickly dispense with the negligence claim because I don't think that should take very long. Our position is that Mr. Cipriani has not properly challenged that claim before this court. And we say that because his opening brief nowhere distinctly and specifically argues or addresses the reasons why the district court dismissed that claim. If you look at his questions presented, it says nothing about negligence. So your view is not having challenged that in the opening brief, it's forfeited. That's right, Your Honor. It's waived under this court's precedent. And unless the court has questions about that or thinks that he did argue it, I'd like to move on to what I think is the real issue here, which is the statutory inkeeper claim. Very good. So the bulk of the brief, and when I say bulk, that's a relative term because it's about three pages of Mr. Cipriani's opening brief addresses the statutory inkeeper claim against Mr. Sabella. The district court dismissed this, or we submit the claim can be affirmed on two bases. The district court touched on both of these. The main reason the district court dismissed that claim is because it determined that Mr. Sabella was not an owner or a keeper under NRS 651.015. Nobody disputes that Mr. Sabella is not the owner of the resort's world property. So what we're talking about is whether he is a keeper. Mr. Cipriani argues that he can be deemed a keeper under two non-Nevada cases interpreting non-Nevada statutes in entirely different contexts here. Those cases are not controlling, they're not precedential, and we would submit they're not persuasive. Mr. Cipriani further admitted in his complaint at paragraph two that the operator, which we would submit is more synonymous with the term keeper, are the resort's world entities. Not just that they're the owners, but that they're also the operators. And if you look at every case that has dealt with this issue in Nevada, the defendants have always been the corporate-owned entities, whether they're just the owners or they're managing entities. There has never been a Nevada case applying this statute to an individual managerial employee or keeper. So in the normal course, not the exclusive course, but in the normal course, you might have one entity, a limited partnership that owns the hotel in Marriott or Hilton that operates it. And that keeps it. That's right. Exactly. And I think Judge Thomas's point was a good one because I presume that your honors came in and spent the night somewhere last night. And if you are anywhere close to the Las Vegas Strip, you can see that these are massive properties. Resort's world, the allegations in the complaint acknowledge it's comprised of a mall. It's comprised of hotels. It's comprised of, quote, one of Las Vegas's largest casinos. It takes thousands of people to operate these properties. And so to say that an individual managerial employee can be deemed the keeper, that could apply to anyone. The pit bosses, the security personnel, valet parkers, any of these people could be deemed a keeper under Mr. Cipriani's rationale. And there's no support for that under Nevada law in none of the cases. But there was a second reason that the district court dismissed this claim or at least acknowledged that it was questionable whether it could survive. And that relates to the fact that Mr. Cipriani, his first amendment complaint, contains no allegations that he was actually physically injured on the premises. That language appears in NRS 651.015. There has to be a death or injury on the premises. Mr. Cipriani's alleged harm under this claim was for intangible harm. Things like harm to his reputation because of the unjustified arrest. Harm to his professional standing. His inability to gamble at Resort's world anymore. None of this is what this statute is designed to address. And in response, in his reply, what Mr. Cipriani has to say is, well, look at this Nigerian case decided by the Nevada Supreme Court. Where it has recognized other kinds of harm as being compensable. Let's look at that case. It dealt with a different statute. It dealt with NRS 651.010, not 015. That statute focuses on things like theft or damage to personal property of a guest left in the hotel room. It has zero application here. Unless the court has any questions, I'll sit down. Thank you. Thank you very much. Council will give you two minutes for rebuttal. Okay, quickly. So, first of all, I know that council wants to construe New Hampshire v. Maine as being completely loosey-goosey without any content. But it clearly says it prohibits parties from deliberately changing positions according to the exigencies of the moment. And the Risotto case, the settlement case, that was a perfect example of that. Where she claimed a disability settlement because she was totally unable to work. But then maintained another suit saying she could have worked, and that's why her layoff was due to age discrimination rather than her inability to work. So these were completely inconsistent, irreconcilable positions that she asserted to gain an advantage in each case. And there's no such unfair advantage here. Finally, council asked the question, why did Alexander, why did Cipriani drop his case against Alexander? I mean, conceivably, you know, Alexander wronged Cipriani, but Cipriani grabbed his phone and maybe overreacted. So maybe Cipriani, you know, they'd just call it even and let everything go because they both were in the wrong in some way. Whereas that wouldn't apply to Resorts World and its negligence in failing to protect Cipriani. So there's an explanation for that. But the bottom line is, yes, it's an equitable doctrine. But it's an equitable doctrine designed to prevent unfairness. When a party takes a position to gain an advantage and then disavows that position, takes the opposite position to gain an advantage. And nothing like that happened here. The Frankel case, the UCLA case explains that, which is why Appleby's never addressed it because it defeats their theory. Unless the court has any further questions, I'll submit. Thank you, Your Honor. We thank counsel for their arguments. The case just argued is submitted. And with that, we are adjourned for the day. Thank you. All rise.
judges: BENNETT, SANCHEZ, THOMAS